95 N.Y.2d 191 (2000)
734 N.E.2d 750
712 N.Y.S.2d 438
ANDREA SMITH-HUNTER, Appellant,
v.
JONATHAN HARVEY et al., Respondents.
Court of Appeals of the State of New York.
Argued May 9, 2000.
Decided July 6, 2000.
*192 Hancock & Estabrook, L. L. P., Syracuse (Alan J. Pierce of counsel), and Walter, Thayer & Mishler, P. C., Albany (Mark S. Mishler of counsel), for appellant.
Carter, Conboy, Case, Blackmore, Napierski & Maloney, P.C., Albany (Nancy E. May-Skinner of counsel), for respondents.
Judges BELLACOSA, SMITH, CIPARICK, WESLEY and ROSENBLATT concur with Chief Judge KAYE; Judge ROSENBLATT concurs in a separate concurring opinion; Judge LEVINE taking no part.

*193 OPINION OF THE COURT
Chief Judge KAYE.
On February 21, 1996, plaintiffthen a graduate student at the State University at Albanyparked her car in a private lot near the downtown Albany offices of defendant law firm, in a spot reserved for defendant Jonathan Harvey, a partner in the firm. When she returned a short time later, plaintiff found that her car had been blocked in by another car. Told that the vehicle belonged to someone at the law firm, plaintiff entered the reception area to ask that the car be moved. After arguing with Harvey, who refused to move his car, plaintiff was asked to leave the offices. Defendant's brother Jack Harvey, another partner in the firm, physically escorted her out. While being maneuvered out the door, plaintiff fell down a nine-step stairway to the sidewalk pavement below. She was taken by ambulance to the hospital, where she underwent surgery and remained for nine days.
On the day of the incident, defendant Jonathan Harvey signed an information charging plaintiff with trespass, a violation (see, Penal Law § 140.05). Days later, plaintiff swore to a complaint charging Jack Harvey with third-degree assault, a class A misdemeanor (see, Penal Law § 120.00 [2]), alleging that he had recklessly caused her to fall down stairs and fracture a bone in her knee. On the application of the District Attorney, the court appointed James Banagan to prosecute the *194 charges against plaintiff, and a special prosecutor for the charges against Jack Harvey.[1]
After she was arraigned on the charges against her, plaintiff served demands for discovery as well as motions for dismissal. Banagan, however, failed to respond, or to appear on six separate court dates, despite plaintiff's counsel's notice to him by phone or letter. Exasperated by the delays, on June 11, 1996 plaintiff moved to dismiss the case for violation of CPL 30.30; the court adjourned the case for two weeks to give the People an opportunity to respond. On June 28, 1996, Banagan by fax served plaintiff's counsel with a "Notice of Readiness for Trial," with a transmittal sheet reading "Covering the Record." The Trial Judge dismissed the case, concluding that "the filing of a bare statement of readiness * * * [was] in fact illusory" based on "the People's failure to respond in any meaningful way to [plaintiff's pretrial] demands and motions." The People took no appeal.
On April 16, 1997, defendant Jonathan Harvey wrote plaintiff:
"With the passage of time, I have reflected upon what transpired the day we met. Upon considering the facts, and particularly in view of the extent and nature of your injury, I believe the incidents of that day could have, and should have, been avoided, and I am sorry for what happened. I believe the filing of a trespass charge against you was unnecessary and did not help the situation. I should have been more considerate and I understand how you have been offended by the charge."
By letter dated June 17, 1997, Jonathan Harvey advised Banagan that he had recently learned of plaintiff's intention to sue him for malicious prosecution; that but for Banagan's negligent failure to oppose plaintiff's dismissal motion such an action could not be brought; and that "in the event such an action for malicious prosecution is commenced against me, I have instructed defense counsel to assert appropriate claims against you." In July 1997, a year after the trespass charges against plaintiff were dismissed, she instituted the present malicious prosecution action. Defendants sought summary judgment on the ground that dismissal of the criminal proceedings pursuant *195 to CPL 30.30 did not constitute a "favorable termination." Defendants supported their motion with a Banagan affidavit averring that he had failed to respond to plaintiff's discovery demandsresulting in the 30.30 dismissalbecause he was busy conducting a trial outside the area and not due to any "determination that probable cause was lacking * * * or that Ms. Smith-Hunter was innocent."
Supreme Court granted defendants summary judgment because, in dismissing the trespass action, the "Judge did not engage in a discussion of the merits and there is absolutely nothing in the decision from which it can fairly be implied that he found the accused to be innocent of the charges lodged against her." The Appellate Division affirmed, concluding that a CPL 30.30 dismissal could never constitute a "favorable termination." We reverse and deny summary judgment.

Analysis
While the tort of malicious prosecution protects against the consequences of wrongful prosecution, public policy favors bringing criminals to justice, and accusers must be allowed room for benign misjudgments. The law therefore places a heavy burden on malicious prosecution plaintiffs, requiring that they establish four elements:
"(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice" (Broughton v State of New York, 37 NY2d 451, 457, cert denied sub nom. Schanbarger v Kellogg, 423 US 929).
This appeal centers exclusively on the second element, and asks a narrow, novel question: whether a CPL 30.30 dismissal can constitute "termination of the proceeding in favor of the accused." We hold that it can.
As a general rule, under the common law any final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination for purposes of a malicious prosecution action (see, Restatement [Second] of Torts §§ 659-660; Prosser and Keeton, Torts § 119, at 874 [5th ed]). Our cases have long embraced this rule as the law of New York. As we stated in Robbins v Robbins (133 NY 597, 599), a criminal proceeding is *196 terminated favorably to the accused when "there can be no further proceeding upon the complaint or indictment, and no further prosecution of the alleged offense." Moreover, it makes no "difference how the criminal prosecution is terminated, provided it is terminated, and at an end" (133 NY, at 599-600; see also, Burt v Smith, 181 NY 1, 5 [favorable termination is a prosecution that "finally ends in failure"]).
A dismissal pursuant to CPL 30.30 falls squarely within Robbins. Once an accusatory instrument is dismissed on speedy trial grounds there can be no further prosecution of the offense. Indeed, other courts that have considered the issue have concluded that, for malicious prosecution purposes, a speedy trial dismissal is a favorable termination (see, Vitellaro v Eagle Ins. Co., 150 AD2d 770 [2d Dept] [Rosenblatt, J., participating]; Lenehan v Familo, 79 AD2d 73 [4th Dept], appeal dismissed 54 NY2d 680; Posr v Court Officer Shield # 207, 180 F3d 409 [2d Cir]; Murphy v Lynn, 118 F3d 938 [2d Cir], cert denied 522 US 1115; Van v Grand Casinos of Miss., 724 So 2d 889 [Miss]; Miller v Watkins, 200 Mont 455, 653 P2d 126; Rich v Baldwin, 133 Ill App 3d 712, 479 NE2d 361).
The common law, however, also recognizes an exception to the general rule where termination of the criminal prosecution is inconsistent with the innocence of the accused. A termination is not considered favorable, for example, if the charge is dismissed "because of misconduct on the part of the accused or in his behalf for the purpose of preventing proper trial" (Restatement [Second] of Torts § 660 [b]). We applied that exception in Halberstadt v New York Life Ins. Co. (194 NY 1, 8-14), concluding that dismissal of a prosecution because the accused had fled the jurisdiction was not a favorable termination. We noted that an accused should not benefit where his own misconduct "prevented a consideration of the merits" (id., at 11; see also, Restatement [Second] of Torts § 661 [no favorable termination where criminal proceeding dismissed because of the "impossibility or impracticality of bringing the accused to trial"]).[2]
A termination is not favorable to the accused, additionally, if the charge is withdrawn or the prosecution abandoned pursuant to a compromise with the accused. Indeed, it is hornbook law that "where charges are withdrawn or the prosecution is *197 terminated * * * by reason of a compromise into which [the accused] has entered voluntarily, there is no sufficient termination in favor of the accused" (Prosser and Keeton, Torts § 119, at 875 [5th ed]). Accordingly, in Hollender v Trump Vil. Coop. (58 NY2d 420), we held that an adjournment in contemplation of dismissala disposition that requires the consent of the prosecutor, the accused and the court (see, CPL 170.55 [1]) does not qualify as a favorable termination.
Similarly, if the charge is withdrawn or dismissed out of mercy requested or accepted by the accused, there is no favorable termination. Mercy, it is reasoned, would not be appropriate if the prosecution were groundless; rather, mercy "implies a belief in the guilt of the accused or at the least in the possibility that he may be guilty" (Restatement [Second] of Torts § 660 [c], comment f). Again, applying the exception to the common-law rule, we have held that the dismissal of a prosecution in the interest of justice did not constitute a favorable termination (see, Ward v Silverberg, 85 NY2d 993, 994).
While defendants rely heavily on two of our precedentsMacFawn v Kresler (88 NY2d 859) and Heaney v Purdy (29 NY2d 157)both decisions are distinguishable from the case at hand.
In MacFawn v Kresler (supra, 88 NY2d, at 860), we held in a summary judgment context that the dismissalwithout prejudiceof the information for insufficiency under CPL 170.30 (1) (a) and 170.35 (1) (a) could not serve as the basis for a malicious prosecution claim. We noted that the dismissal without prejudice was not a final termination of the action. Rather, the People remained "at liberty to amend the information to correct the deficiency" (id., at 860).
Far from controlling the case at hand, MacFawn simply held that a plaintiff in a malicious prosecution action must show, as a threshold matter, that the criminal proceeding was finally terminated. Indeed, it is well settled that any "disposition of the criminal action which does not terminate it but permits it to be renewed * * * cannot serve as a foundation for the [malicious prosecution] action" (Prosser and Keeton, Torts § 119, at 874 [5th ed]). This is so for two reasons. First, "it cannot be known that the prosecution was unjust or unfounded until it is terminated" (Robbins v Robbins, 133 NY 597, 599, supra). Second, if a malicious prosecution action is allowed to proceed before the final termination of the underlying action, "there might be two conflicting determinations as to the same transaction" (id., at 599).
*198 A dismissal without prejudice qualifies as a final, favorable termination if the dismissal represents "the formal abandonment of the proceedings by the public prosecutor," for instance, by the entry of a nolle prosequi (Restatement [Second] of Torts § 659 [c] and comment e; see also, Stevens v Redwing, 146 F3d 538, 546 [8th Cir]; Joiner Ins. Agency v Principal Cas. Ins. Co., 684 So 2d 1242 [Miss]).[3] In MacFawn, however, there was no indication that the prosecutor abandoned charges against the accused. Accordingly, we held that the dismissal without prejudice was not final and thus could not support a malicious prosecution claim.
Similarly, in Heaney v Purdy (29 NY2d 157, 158), after a three-hour "trial," an Ontario court refused to exercise jurisdiction over an accused who had been charged with trespass. This Court held that there was no favorable termination because, under the specific circumstances at issue, "the termination of the proceeding was so inconclusive that it shows an absence of prosecution" (id., at 159).
Here, by contrast, the dismissal under CPL 30.30 was a final judgment which cannot be revived by re-filing the accusatory instrument. Nor was the action terminated as a result of a settlement, mercy or any misconduct by plaintiff. The prosecution terminated in a manner not inconsistent with plaintiff's innocence. The CPL 30.30 dismissal was sought and granted as a matter of statutory right based on the prosecutor's inaction. Plaintiff, the record reflects, was eager to vindicate herself. On several occasions her attorney reminded Banagan of pending pretrial procedures and court appearances. Despite plaintiff's urgings, however, Banagan failed to oppose the CPL 30.30 motion to dismiss and ignored all other requests. Banagan's bald statement that this failure was the consequence of his conducting a trial out of town and not due to any "determination that probable cause was lacking"the only proof offered in support of defendants' summary judgment motionis insufficient to overcome the general rule that a dismissal on speedy trial grounds is a favorable termination.
There is, to be sure, language in some of our more recent cases implying that a dismissal, in order to qualify as a favorable termination, must affirmatively indicate the innocence of the accused. In MacFawn, for example, the Court described a *199 favorable termination as one that "involves the merits and indicates the accused's innocence" (MacFawn v Kresler, supra, 88 NY2d, at 860). Similarly, in Ward, the Court stated the test as whether "a judicial determination of the accused's innocence on the merits of the action has been made" (Ward v Silverberg, supra, 85 NY2d, at 994; see also, Hollender v Trump Vil. Coop., supra, 58 NY2d, at 425-426). That language, however, was not necessary to the resolution of those cases, which were decided in accordance with the settled principles described above.[4]
We reject the notionas contrary to the common law and our longstanding precedentsthat, under the particular circumstances here, plaintiff must demonstrate innocence in order to satisfy the favorable termination prong of the malicious prosecution action. Indeed, requiring that a plaintiff demonstrate innocence after a prosecution has been dismissed on speedy trial grounds would have the anomalous effect of barring recovery for an innocent accused whose prosecution was abandoned for lack of merit. Moreover, an individual improperly charged with a criminal offense would be compelled to waive speedy trial rights in order to preserve a civil remedy. The law should not require one who is falsely and maliciously accused to proceed to trialincurring additional financial and emotional costsas a prerequisite to recovery for malicious prosecution.
Our holdings in Ward, Hollender and MacFawn stand only for the proposition that dispositions inconsistent with innocence, like the ones in those cases, cannot be viewed as favorable to the accused. While there may be instances where a malicious prosecution defendant can show that the circumstances surrounding a CPL 30.30 dismissal are inconsistent with a plaintiff's innocence, no such circumstances are present on this record. Finally, it bears note that we are not called upon to, nor do we, consider any other element of a malicious prosecution *200 action that plaintiff must establish in order to recover against defendants.
Accordingly, the order of the Appellate Division should be reversed, with costs, and defendants' motion for summary judgment denied.
ROSENBLATT, J. (concurring).
The Chief Judge has written a cogent decision resolving a conundrum that has beset the law of malicious prosecution: the appropriate test for determining what is a "favorable termination." The Court, I believe, has articulated the test correctly, holding that the speedy trial dismissal was "not inconsistent with innocence" and therefore constituted a favorable termination. I write separately only to emphasize that this test is far more sensible than the "indicative of innocence" test articulated in MacFawn v Kresler (88 NY2d 859).
Over a century ago, this Court established the general rule that a criminal prosecution terminated "favorably" if the accused was not convicted and "there [could] be no further proceeding upon the complaint or indictment, and no further prosecution of the alleged offense" (Robbins v Robbins, 133 NY 597, 599). A primary purpose behind the favorable termination element was (and still is) to ensure against "conflicting determinations" and parallel litigation in criminal and civil actions (see, Robbins v Robbins, supra; see also, Hauser v Bartow, 273 NY 370, 375; Prosser and Keeton, Torts § 119, at 874 [5th ed]).
Criminal cases that do not end in convictions are not always considered "favorable" to the accused. For example, a criminal case is not terminated "favorably" if the prosecutor abandons it because of misconduct by the accused preventing successful prosecution, or pursuant to a compromise between the accused and the complainant, or out of mercy requested or accepted by the accused (see, Restatement [Second] of Torts § 660 [a]-[c]). This all makes good sense under an estoppel rationale: we foreclose malicious prosecution actions by those who carry even an aroma of guilt. The estoppel rationale is not applicable, however, to an innocent plaintiff who was relieved of criminal charges in a neutral manner, i.e., one that carried no indicia of guilt or innocence.
The "not inconsistent with innocence" rule is the equivalent of the Robbins rule (together with estoppel-type exceptions). For the most part, New York jurisprudence conformed to this rule until Heaney v Purdy (29 NY2d 157). There, the Court *201 held that a malicious prosecution action could "not be maintained if the prior prosecution [did] not `fairly impl[y] lack of a reasonable ground for the prosecution'" (Heaney v Purdy, supra, at 160 [quoting Halberstadt v New York Life Ins. Co., 194 NY 1, 11]). Subsequent decisions relied on the Heaney majority's articulation of the favorable termination standard and held that a termination could not be deemed favorable unless it affirmatively indicated innocence (Hollender v Trump Vil. Coop., 58 NY2d 420, 425-426 [quoting Restatement (Second) of Torts § 660, comment a]; see also, Ward v Silverberg, 85 NY2d 993, 994; MacFawn v Kresler, 88 NY2d 859, 860, supra).
The transformation of the formulation from Robbins v Robbins (133 NY 597, 599, supra) to Hollender v Trump Vil. Coop. (58 NY2d 420, 425-426, supra) resulted at least in part by references to infelicitous language in the Restatement (Second) of Torts § 660, comment a, to the effect that favorable terminations are to be equated only with dispositions that "indicate the innocence of the accused" (see, Hollender v Trump Vil. Coop., supra). The comment, however, is better read in conjunction with its heading ("Termination inconsistent with guilt") and the actual provisions of section 660 to which the comment applies (Restatement [Second] of Torts § 660 [a]-[c]). In my view, the Restatement does not purport to read into the favorable termination element a requirement that the underlying criminal termination "indicates innocence."
The pre-Heaney "not inconsistent with innocence" rule, designed to exclude only undeserving plaintiffs, had thus become transformed into the "indicative of innocence" rule. Dissenting in Heaney, Judge Breitel (joined by Judge Jasen) cautioned against this transformation. He argued that a neutral criminal termination, inconsistent with guilt, should continue to satisfy the favorable termination element (see, Heaney v Purdy, 29 NY2d 157, 161, n. supra). The "indicative of innocence" rule carried the potential for sweeping out claims by deserving plaintiffs whose criminal cases were disposed of in ways that carried not even the slightest indication of guilt.
An "indicative of innocence" test saddles plaintiffs with a burden that is often difficult if not impossible to prove in speedy trial dismissal cases. Recognizing this, courts strained to squeeze speedy trial dismissals into the "indicative of innocence" pigeon hole (see, e.g., Loeb v Teitelbaum, 77 AD2d 92, 101). Too often it is a poor fit. Most of the time, speedy trial dismissals do not indicate innocence. Unless supported by reasons set forth on the recorda raritya speedy trial dismissal *202 generally indicates nothing as to guilt or innocence. Typically, those dismissals are neutral and do not suggest guilt, innocence or anything other than the fact that the time ran out.
Indeed, some speedy trial motions are fiercely resisted. A review of the large body of CPL 30.30 decisional law reveals as much. Speedy trial dismissals may be the product of understaffing, imperfect case management, inefficiencies in detainer filings or interstate rendition, turnover of personnel, bureaucratic delay, misunderstanding, police department or prison delays, misplaced files, demands of other States or jurisdictions or the difficulty of tracking witnessesor simply allowing a weak case to languishto name a few of the more common reasons.
Moreover, a speedy trial dismissal, particularly when unresisted, may reflect a prosecutor's belief that the case cannot be proved. But even then the reasons are not necessarily indicative of innocence. In prosecuting a possessory crime, for example, the District Attorney may drop the case, unconvinced of defendant's ever having possessed the contraband at all, or because the police seized it from defendant's possession in violation of the Fourth Amendment. Or perhaps because the contraband was lost somewhere in the evidence room, or mistagged.
By virtue of the Court's endorsement of the "not inconsistent with innocence" test in speedy trial cases, New York courts will no longer have to engage in jurisprudential gymnastics or semantics. Nor will courts have to contemplate the prospect of an exotic branch of jurisprudence in which Assistant District Attorneys are summoned to appear at trials or depositions to answer (or not answer) questions as to their subjective opinions relating to the degree of guilt of the accused, the strength of the case, their work habits and philosophies, their attitudes toward particular crimes or the reasons they abided or resisted a speedy trial motion.
The "indicative of innocence" rule potentially stood to bar recovery by deserving plaintiffs whose criminal cases were dismissed on neutral grounds. As a practical matter, the cases that satisfy a malicious prosecution claim are often weak from a prosecutorial standpoint. Given that prosecutors generally will be more likely to neglect a weak case than a strong one, the "indicative of innocence" standard creates a paradox:
In case number one, a complainant bent on malice causes the arrest of a wholly innocent person based on trumped up allegations. *203 The accused wants vindication, but the prosecution drags its feet, believing the case lacks merit. Eventually, the criminal court grants the accused's speedy trial dismissal motion. In case number two, a more credible complainant provides the prosecution with a meritorious case more likely to sustain the prosecutor's interest. Accordingly, the prosecutor takes it to trialbut the jury acquits.
Under the "indicative of innocence" rule, only the second accused gains a "favorable" termination. The first does not, even though the accusation was trumped up and malicious. The more far-fetched the accusation, the greater the likelihood the case will be dismissed on speedy trial grounds, thereby dooming the accused's subsequent malicious prosecution suit. In the end, the most wrongly maligned are the least likely to gain civil redress.
The Court obviously is sensitive to this paradox and rectifies its consequences by applying the "not inconsistent with innocence" test. In that manner, a potentially deserving plaintiff whose criminal case was dismissed by a neutral speedy trial termination satisfies the favorable termination element.
Order reversed, etc.
NOTES
[1] After the Trial Judge denied Jack Harvey's motion to dismiss the assault charges against him, he pleaded guilty to the reduced charge of disorderly conduct.
[2] In Halberstadt, four of the eight Judges who made up the Court concurred in dismissal of the action on the alternative ground that there had been no prosecution of the accused at all (194 NY, at 14).
[3] If the prosecutor abandons the criminal proceedings but then subsequently re-institutes charges, the action has not been terminated favorably to the accused (Restatement [Second] of Torts § 660 [d] and comment g).
[4] Nor did Ryan v New York Tel. Co. (62 NY2d 494, 502) establish a per se rule regarding 30.30 dismissals (see, 257 AD2d 239, 241). In Ryan, this Court held that plaintiff was collaterally estopped from suing for wrongful discharge and other related claims based on an administrative determination that he had stolen company property. We held that collateral estoppel applied even though criminal charges against plaintiff had been dismissed in the interest of justice, noting that such a dismissal did not establish plaintiff's "innocence of the charges" (id., at 504). In addition, the Court dismissed plaintiff's malicious prosecution claim because the administrative determination provided probable cause to prosecute (id., at 503). Ryan did not address whether a dismissal in the interest of justice constitutes a "favorable termination" for the purposes of a malicious prosecution action.