Brian K. BORDEAU; Francis Laundry, Jr.; and Jeffrey S. Laundry, Plaintiffs,

v.

VILLAGE OF DEPOSIT; Village of Deposit Police Department; Jon Bowie, Individually, and in his Official Capacity; Peter McDade, Village Justice, Individually, and in his capacity as Village Justice, New York State Trooper Thomas Kulirowski, Individually and in his official capacity and New York State Trooper Jeff Kowalewski, Individually and in his official capacity Defendants.

No. 1:98–CV–1313.

United States District Court, N.D. New York.

Sept. 7, 2000.

Kevin F. Guyette, Binghamton, for plaintiffs.

O'Connor, Gacioch Pope & Tait, LLP, Hugh B. Leonard, of counsel, Binghamton, for Village of Deposit defendants.

## MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

Plaintiffs brought this action pursuant to 42 U.S.C. § 1983, seeking money damages. Brian K. Bordeau ("Bordeau"), Francis Laundry Jr. ("Francis L. Jr."), and Jeffrey S. Laundry ("Jeffrey L.") allege violations of their constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution as well as violations of New York State common law.

Defendants Village of Deposit ("Village"), Village of Deposit Police Department, Village of Deposit Police Chief Jon Bowie ("Chief Bowie"), Peter McDade ("Justice McDade"), and unnamed New York State Troopers have moved for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiffs oppose the motion.

The parties have stipulated to the discontinuance of all claims against the Village of Deposit Police Department, Village Police Officers Paul Buttacavoli ("Buttacavoli") and David Lang ("Lang"), Village Officer–in–Training Tim Buckley ("Buckley"), New York State Troopers Thomas Kulirowski ("Kulirowski") and Jeff Kowalewski ("Kowalewski"), and the punitive

damages claim against the Village.[1] Accordingly, this decision addresses only the remaining claims against the Village, Chief Bowie, and Justice McDade.

Oral argument was held on May 12, 2000 in Utica, New York. Decision was reserved.

## I. FACTS

This lawsuit arose out of an incident that began on May 22, 1997. Plaintiffs, along with Francis Laundry Sr. and Patty Pugh, made up a five-person crew that had been washing bridges in the Deposit area. The crew, all of whom were from Plattsburgh, New York, obtained lodging in the Deposit Motel. Justice McDade owned and resided at the motel and also served as Village Justice. This is where the stories of the parties diverge.

According to plaintiffs, upon checking into the motel, Justice McDade told the crew, "I own this town, I run this town. I am the law. If you guys go anywhere near a bar or anything like that I want to know." (Compl.Prelim.Statement.) After checking into the motel, the crew went to the Village Inn ("Inn") to get something to eat and drink. Jeffrey L., who allegedly does not drink alcohol, left the Inn and returned to the motel around 8:00 p.m. with the crew's work vehicle. At approximately 9:00 p.m., Francis L. Jr. left the Inn to walk to the motel. He arrived at the motel around 9:15 p.m. and stopped in Jeffrey L.'s room to inform him that he had been stopped by the police on his way home and asked for identification. At about 9:30 p.m. Jeffrey L. heard someone at the door of his motel room, and when he opened the door he was grabbed by the hair from behind, beaten, maced, handcuffed, and dragged to a police vehicle by the Village Police Officers, including Chief Bowie, and New York State Troopers. Francis L. Jr. heard the commotion outside his motel room and when he opened the door to his room he also was beaten, maced, handcuffed, and dragged to a police car. Bordeau, who had walked to the motel from the Inn after Francis L. Jr., saw the officers beating Francis L. Jr. and subsequently was arrested, maced, handcuffed, and put into a police car.

After plaintiffs were in the custody of the Village Police Officers, Justice McDade emerged from the motel and ordered the officers to mace the plaintiffs again, which they did. The three plaintiffs were then taken to the police station where they were beaten further. Although plaintiffs requested medical attention several times upon their arrival at the police station, they were not treated until several hours later. Justice McDade appeared at the police station and conferred with the officers about what charges to bring against plaintiffs. Plaintiffs were arraigned before Justice McDade, bail was set, and they were sent to jail. Justice McDade then delayed plaintiffs' release from jail for hours by insisting that he sign their release papers personally. Upon their release, sometime on the evening of May 24, 1997, or morning of May 25, 1997, plaintiffs returned to Plattsburgh where they went to a hospital to have their injuries treated.

According to defendants,[2] Officers Buttacavoli and Buckley clocked plaintiffs' station wagon traveling 42 mph through the Village where the speed limit is 30 mph. The officers followed plaintiffs' car into the parking lot of the Deposit Motel. The officers observed Francis L. Jr. exit from the passenger side of the vehicle and go around to the driver's side door to help Bordeau, who was obviously intoxicated, from the car. Officer Buttacavoli ordered

---

1. Buttacavoli, Lang, and Buckley are not named in the caption of the Amended Complaint.

2. Although in stating the facts, both the defendants' and plaintiffs' versions of events are represented, as required in a summary judgment motion, facts, inferences therefrom, and ambiguities will be viewed in a light most favorable to the nonmovant plaintiffs.

Bordeau to get back in the car. Francis L. Jr. began yelling and swearing at the officers and told Bordeau to go to his motel room, which he did. Francis L. Jr. continued to yell and swear at the police officers, creating a commotion. Buttacavoli radioed for assistance, and Chief Bowie, Officer Lang, and Troopers Kulirowski and Kowalewski responded. When the officers arrived, Buttacavoli advised Chief Bowie of the situation and they decided that the village officers, rather than the state troopers, would arrest plaintiffs.

By the time the back-up officers arrived, Jeffrey L. was also outside of the motel yelling and swearing at the officers. Chief Bowie and Buttacavoli approached Jeffrey L. and with a slight struggle he was handcuffed and arrested. Chief Bowie was then tackled by Francis L. Jr. who, after a struggle, was handcuffed and arrested. During this time Bordeau, who was also yelling at the officers, was handcuffed and arrested by Lang. The three suspects were then taken to the Village Police Station. The officers admit to using mace and some force in their effort to subdue the three suspects, but only what was necessary for the situation. The officers deny that any force was used at the police station. Defendants acknowledge that at some point during the incident, Justice McDade returned home to the motel, but deny that he witnessed any of the events or that he ordered the officers to mace the plaintiffs.

Plaintiffs were formally charged and arraigned by Justice McDade, but defendants deny that he acted improperly in any way in his capacity as Village Justice. Subsequent to plaintiffs' arraignment and prior to being taken to jail, Bordeau and Francis L. Jr. were taken to the Delaware Valley hospital. Jeffrey L. was taken directly to jail because he did not complain of any injuries. All three were released from jail on the evening of May 23, 1997, and returned home to Plattsburgh. They were treated at the Champlain Valley Hospital on the morning of May 24, 1997.

The three plaintiffs were charged with combinations of a variety of crimes including resisting arrest, criminal mischief, disorderly conduct, harassment, obstructing governmental administration, public lewdness, and in the case of Bordeau, driving while intoxicated. The Delaware County District Attorney presented the charges to a Delaware County grand jury, which returned an indictment against the plaintiffs on October 17, 1997. The indictments were dismissed on March 3, 1998, because of a procedural defect. The District Attorney sent a letter to plaintiffs' attorney on June 23, 1998, stating that the indictments were not going to be re-presented to a grand jury due to time constraints. On August 17, 1998, plaintiffs filed their complaint in this matter. An amended complaint filed on April 28, 1999, alleges ten causes of action.

## II. *DISCUSSION*

### A. *Summary Judgment*

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56; *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348.

At that point the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348.

## B. *Claims Against Chief Bowie*

Plaintiffs' sixth and seventh causes of action involve allegations that Chief Bowie violated both state and federal laws in disregard of plaintiffs rights. The sixth cause of action arises from the alleged unlawful arrest and imprisonment of plaintiffs while the seventh cause of action arises from the alleged malicious prosecution of plaintiffs.[3]

### 1. *False Arrest and False Imprisonment*

■ To establish a cause of action alleging false arrest and false imprisonment, under § 1983 and New York state law, a plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995)

In the present case there is no question as to the first three elements—Chief Bowie intended to confine the plaintiffs, the plaintiffs were conscious of their confinement, and the plaintiffs did not consent to their confinement. The only element in dispute is the fourth element—whether the confinement was privileged. A confinement is privileged if probable cause existed at the time of the arrest. *Decker v. Campus,* 981 F.Supp. 851, 856 (S.D.N.Y.

1997). Thus, a claim for false arrest must fail if probable cause to arrest existed. *Singer,* 63 F.3d at 118.

■ Where an officer has "reasonably trustworthy information" that the potential arrestee committed a crime, probable cause exists to make the arrest. *Id.* at 119. The information need not have been obtained firsthand by the arresting officer. *See Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir.2000). Rather, the information may be obtained "from some person, normally the putative victim or eyewitness." *Id.* (internal quotation omitted).

■ According to plaintiffs' version of events, Chief Bowie, along with other officers, dragged both Jeffrey L. and Francis L. Jr. out of their hotel rooms and arrested them even though they had committed no crime. The officers then arrested Bordeau, despite the fact that he also had committed no crime. In this scenario, Chief Bowie would not have had probable cause to arrest plaintiffs. These facts, however, are disputed by defendants.

Defendants argue that Chief Bowie, upon his arrival at the scene, was apprized of the alleged illegal conduct of plaintiffs by those officers who had made the observations. Accordingly, pursuant to defendants' argument, there is no question but that Chief Bowie had probable cause to make the arrests.

However, viewing the facts in the light most favorable to the plaintiffs, as must be done on this motion for summary judgment, *see* Fed.R.Civ.P. 56, it is clear that a question of fact exists as to whether probable cause existed for Chief Bowie to arrest plaintiffs. Accordingly, summary judgment dismissing the sixth cause of action is inappropriate.

### 2. *Malicious Prosecution*

■ The elements of plaintiffs' seventh cause of action for malicious prosecu-

---

**3.** The first, fourth, and fifth causes of action alleging the use of excessive force were not included in the motion for summary judgment and therefore remain in the case.

tion, although a federal claim for violation of the Fourth Amendment right to be free from unreasonable seizures, mirror the elements of a state law malicious prosecution claim. *Hansel v. Sheridan,* 991 F.Supp. 69, 73 (N.D.N.Y.1998). In order to prove a claim for malicious prosecution under New York law, a plaintiff must establish: "(1) the commencement or continuation of a criminal proceeding by defendants against plaintiff; (2) the termination of that proceeding in favor of the plaintiff; (3) the absence of probable cause for the criminal proceeding; and (4) actual malice." *Id.* Because the favorable termination element disposes of many malicious prosecution claims, it has become a precursor test to analyzing the other three factors. *See, e.g., Brawer v. Carter,* 937 F.Supp. 1071, 1080 (S.D.N.Y.1996)(dismissing malicious prosecution claim due to plaintiff's failure to establish favorable termination, without analysis of the other three elements of the claim).

Defendants' only contention on this motion is that the termination of the proceedings against the plaintiffs were not favorable to them. Therefore, only the favorable termination element of this claim is addressed.

Defendants point to the affidavit of District Attorney Richard D. Northrup, Jr., in which he avers that his decision not to re-present to grand jury was based upon time constraints, and "in no way based upon any indicia that the defendants were 'not guilty.'" (Northrup Aff. ¶¶ 11–12.) This shows, according to defendants' argument, that the termination was not favorable to plaintiffs.

The Court of Appeals of New York recently explained the favorable termination element of a malicious prosecution claim. *See Smith–Hunter v. Harvey,* 95 N.Y.2d 191, 712 N.Y.S.2d 438, 734 N.E.2d 750 (2000). The court explained that a plaintiff must show that "the prosecution terminated in a manner not inconsistent with plaintiff's innocence." *Id.* at 198, 712 N.Y.S.2d 438, 734 N.E.2d 750. A dismissal

without prejudice that indicates abandonment by the prosecutor meets the requirements of the favorable termination element of a malicious prosecution claim. *Id.* at 196, 712 N.Y.S.2d 438, 734 N.E.2d 750.

■ Here the District Attorney declined to re-present the charges to a Grand Jury, instead indicating his intention to abandon the prosecution. While the District Attorney stated that the decision not to re-present was not an indication that plaintiffs were "not guilty," there is nothing in the dismissal that could be construed as inconsistent with plaintiffs' innocence. Because the dismissal, even if based upon time constraints, is not inconsistent with plaintiffs' innocence, the termination of the prosecution is not unfavorable to plaintiffs as a matter of law. *See id.* at 196–198, 712 N.Y.S.2d 438, 734 N.E.2d 750.

Plaintiffs make the further argument that the dismissal was, in effect, a speedy trial dismissal, and a favorable termination on that ground. In this Circuit, "dismissal on speedy trial grounds generally qualifies, under New York law, as favorable termination." *Murphy v. Lynn,* 118 F.3d 938, 949 (2d Cir.1997), *cert. denied,* 522 U.S. 1115, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998). In New York, the prosecution must be trial ready within three months (for misdemeanor crimes) and six months (for felonies) after the prosecution is initiated. N.Y.Crim. Proc. Law § 30.30. Certain periods of time, such as adjournments to which the defendant consents, are excludable from the calculations. *Id.*

■ Plaintiffs in this case were initially arraigned before Justice McDade on May 22, 1997, beginning the speedy trial time. The prosecution would have had to be ready for trial on August 22, 1997 (for misdemeanors) and November 22, 1997 (for felonies). Defendants make no argument that they were ready for trial on those dates, and make no argument that any period of time was excludable under the statute. Accordingly, a subsequent averment that the dismissal was not due to

failure to meet the speedy trial requirements is insufficient to save the dismissal from being deemed as one for speedy trial reasons. *See Murphy*, 118 F.3d at 951 (finding that failure to obtain an indictment, which was a prerequisite to trial readiness, until six months after prosecution initiated, constituted a favorable abandonment on speedy trial grounds); *cf. People v. England*, 84 N.Y.2d 1, 5, 613 N.Y.S.2d 854, 636 N.E.2d 1387 (1994)(finding a "ready for trial" statement insufficient to meet speedy trial requirements when, due to failure to obtain indictment within six months, trial not possible). The dismissal of the prosecution against plaintiffs was, in effect, based upon failure to meet speedy trial requirements, and therefore considered a favorable termination.

Summary judgment in favor of the Chief Bowie on the seventh cause of action is inappropriate.

**C. *Village of Deposit***

■ Plaintiffs' second and third causes of action both allege that the Village should be held liable for the injuries sustained by Francis L. Jr., Jeffrey L., and Bordeau. A municipality may be held liable under § 1983 only when a governmental policy or custom causes the constitutional violation at issue. *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 137 (2d Cir.), *cert. denied*, —— U.S. ——, 120 S.Ct. 398, 145 L.Ed.2d 310 (1999); *Thomas v. Roach*, 165 F.3d 137, 145 (2d Cir.1999); *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "A municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials .... However, a policy or custom may only be inferred if the acts or omissions of a municipality's supervisory officials are serious enough to amount to 'deliberate indifference' to the constitutional rights of a plaintiff." *Poulsen v. City of North Tonawanda*, 811 F.Supp. 884, 896 (W.D.N.Y.1993)(citing *Villante v. Dep't of*

*Corrections*, 786 F.2d 516, 519 (2d Cir. 1986)).

**1. *Failure to Train or Supervise***

■ In order to show that a municipality, through its failure to train or supervise employees, has violated § 1983, three requirements must be met. *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992). First, the municipality's policymaker must know " 'to a moral certainty' that [his or] her employees will encounter a given situation." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n. 10, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Second, either the situation must present the employee with the sort of difficult decision that training or supervision would ameliorate or there must be "a history of employees mishandling the situation." *Id.* Finally, it must be shown that the "wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* at 298.

■ Furthermore, "the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury. A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993). Evidence of an unconstitutional action by a police officer will not, on its own, be enough to prove that the training program the officer received was inadequate, let alone prove that any inadequacy was a result of a city's deliberate indifference. *Carnegie v. Miller*, 811 F.Supp. 907, 911 (S.D.N.Y.1993).

■ In their complaint, plaintiffs assert that the Village failed to properly train, supervise, and establish sound guidelines regarding the use of physical force, the use of weapons, and the appropriate circumstances for approaching, stopping, and apprehending suspects. In order to

rule on this claim, it must be determined whether a municipal policymaker would know that: (1) police officers would encounter at least one, if not all, of these situations; (2) training would help prevent mishandling of these situations; and (3) a wrong choice by an officer in these situations would likely result in the deprivation of a citizen's constitutional rights. If it can be established that the training areas in question meet these three requirements, it must then be determined if the training provided by the Village was adequate. Defendants claim that the guidelines and policies for the Village Police Department and the certificates of training of the members of the Village Police Department all demonstrate the adequacy of the supervision and training of the police. Plaintiffs claim that the Village did not properly establish guidelines for these areas.

The adequacy of the training and supervision policies established by the Village is not an issue that is properly resolved on a motion for summary judgment. The dispute which involves a question of fact should be decided by a jury. Summary judgment on this claim must be denied.

### 2. *Pattern of Conduct*

Liability may be imposed upon a municipality based upon a pattern or practice as well as an explicit rule or regulation. *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870–71 (2d Cir.1992). Where a pattern of conduct is "persistent and widespread" such that it would constitute "constructive acquiescence of senior policy-making officials," it becomes a policy of the municipality and liability ensues. *Id.* A single or isolated incident, however, is insufficient to constitute a municipal policy. *Id.* at 870. Moreover, in order to hold a municipality liable, it must be shown that the constitutional violation was caused by the municipal policy. *Id.*

In their complaint, plaintiffs allege that the failure of the Village to adequately discipline Village police officers resulted in the ratification of a pattern of unconstitutional conduct. Because there is no allegation that the Village discipline policy is unconstitutional on its face, in order to establish a causal connection between the policy and the incidents of excessive force alleged in the complaint, plaintiffs have to show that the Village was aware of violations but failed to respond. It is not enough for plaintiffs to provide evidence of only one incident of unconstitutional behavior. In support of their allegations, plaintiffs point to two claims, in addition to the present claim, involving the use of excessive force by Chief Bowie. Plaintiffs allege that these two incidents, plus the present claim, show that the Village knew about previous problems involving the use of excessive force by Chief Bowie, failed to properly respond to those constitutional violations, and is therefore liable.

The first claim cited by plaintiffs was filed by Robert Neu against the Village, the Village Police Department, and Officers Kennedy and Bowie on September 6, 1996. The claim was settled for $70,000. The Village Board of Trustees reviewed the Neu claim and determined that neither of the officers charged should be reprimanded. Plaintiffs assert that the Village acted improperly as evidenced by the fact that a complaint was made and investigated, and not only was no disciplinary action taken, but the Village actually promoted Bowie to Chief of Police. However, plaintiffs do not describe how the investigative procedure was inadequate. The conclusion that the procedure was inadequate is based on the fact that neither Chief Bowie nor the other officer involved were disciplined in any way. This is a conclusory allegation which is not supported by any specific facts. The Board's behavior, as alleged, is not suggestive of an attitude that police brutality has been condoned.

The second claim cited by plaintiffs was filed on April 20, 1999, by Joseph Fazzone against the Village, Village Police Department, and Chief Bowie. This claim is still pending. Due to the fact that the claim was filed subsequent to the filing of the

present claim, it could not have put the Village on notice. Any incident that occurred after the filing of the present claim, cannot establish, as required in a motion for summary judgment, that the Village knew about impermissible conduct but failed to respond. Because plaintiffs cannot establish that the subsequent incident contributed to their injuries, the claim is irrelevant. *See Pawlicki v. City of Ithaca,* No. 95–CV–1571, 1996 WL 705785, at *3 (N.D.N.Y. Dec. 5, 1996).

The two claims cited by plaintiffs, other than the present claim, are not sufficient to uphold this cause of action because they do not establish that the Village knew about impermissible conduct but failed to respond. Plaintiffs are left only with the present incident to establish that the Village had a policy condoning police brutality. As discussed above, when a municipal policy it not itself unconstitutional, more than one incident is necessary to prove liability. Plaintiffs have not done so, therefore, the third cause of action must be dismissed.[4]

### D. *Claims Against Justice McDade*

Justice McDade is named in the ninth and tenth causes of action.[5] In their ninth cause of action, plaintiffs allege that Justice McDade, "acting outside his judicial capacity ... directed the police officers to mace plaintiffs." This is a state common law cause of action for assault and battery. In their tenth cause of action, plaintiffs allege that Justice McDade, acting in his capacity as village justice, violated federal laws in disregard of plaintiffs' constitutional rights in consulting with the police officers and in processing release papers. The latter cause of action will be discussed first.

### 1. *Judicial Immunity*

▇▇▇▇▇ It is well established that a judicial officer is immune from a lawsuit seeking money damages. *Mireles v. Waco,* 502 U.S. 9, 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). However, immunity does not protect nonjudicial activities or actions "taken in the absence of all jurisdiction." *Id.* at 11–12, 112 S.Ct. 286. Judicial immunity must be broadly construed. *Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Where a judicial action is taken in a proceeding, which is a type of proceeding over which the court has jurisdiction, there is not an absence of all jurisdiction. *See id.* at 357–359, 98 S.Ct. 1099.

▇▇▇▇▇ In setting forth their claims against Justice McDade as Village Justice, plaintiffs specifically allege that he was acting in his judicial capacity. Therefore, the only issue is whether he was acting in the absence of all jurisdiction. If the facts as set forth by plaintiffs do not demonstrate that Justice McDade acted in the absence of all jurisdiction, this claim must be dismissed.

Plaintiffs assert that Justice McDade's involvement in the incident at the Deposit Motel influenced his actions as Village Justice. They allege that his judicial actions were improper and motivated by personal animosity. In support of their claim, plaintiffs point to two of his actions: one, that he conferred with police regarding the charges to be lodged against plaintiffs; and two, that he caused a delay in the plaintiffs' release from jail by insisting that he sign any release papers personally. While this evidence may indicate, as plaintiffs allege, that he acted improperly in his capacity as Village Justice, it does not show that he was acting in the absence of all jurisdiction. Plaintiffs never in fact allege that Justice McDade was

---

4. Although this claim against the Village has been dismissed, the Village remains a defendant as to the first, second, fourth and eighth causes of action.

5. Although the first cause of action purports to be "against all defendants," Justice McDade is not mentioned therein.

acting without jurisdiction. Plaintiffs seem to be arguing, mistakenly, that evidence of improper actions is enough to overcome judicial immunity. Improper actions and actions taken in the absence of all jurisdiction are not synonymous and the former is not sufficient to uphold this claim. *See Mireles,* 502 U.S. at 11, 112 S.Ct. 286; *Stump,* 435 U.S. at 356, 98 S.Ct. 1099.

In order to survive the motion for summary judgment, plaintiffs had to show that Justice McDade acted in the absence of all jurisdiction. The facts alleged by plaintiffs do not establish that he was without jurisdiction to sign release papers personally or confer with police officers about charges to be brought against detainees. For these reasons, the tenth cause of action must be dismissed.

### 2. *Supplemental State Claim*

It is well settled that pendant jurisdiction is a doctrine of discretion. In deciding whether to exercise jurisdiction over supplemental state law claims, a federal court should take into consideration judicial economy, convenience, and fairness to the litigants. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). When the balance of these factors indicates that a case properly belongs in state court, the federal court should decline to exercise jurisdiction by dismissing the case without prejudice. *Id.* at 726–727, 86 S.Ct. 1130.

Defendants argue that because the federal claim against Justice McDade has been dismissed, the state law claim against him should not be heard in federal court. *See id.* at 726, 86 S.Ct. 1130 (stating that state law claim should be dismissed when federal claims dismissed). However, Justice McDade is not the only defendant in this case; federal claims remain against Chief Bowie and the Village. Moreover, the state law claim against Justice McDade is based upon the same circumstances as the federal claims against the other defendants. Judicial economy would thus be served by hearing the claims against Justice McDade and the other defendants concomitantly. Therefore, supplemental jurisdiction is retained over plaintiffs' state law claim in the ninth cause of action against Justice McDade.

### E. *Damages*

Defendants move for a dismissal of all claims for compensatory damages, or in the alternative, an order precluding plaintiffs from presenting any evidence regarding causation or permanency of their claimed injuries. They make this motion based on the fact that plaintiffs did not identify an expert prior to the close of discovery. Defendants argue that expert testimony is required to establish permanency and causation.

In order to sustain an award for compensatory damages, plaintiff must adduce evidence of the existence of damages as well as evidence that the damages were proximately caused by the constitutional violation. *Miner v. City of Glens Falls,* 999 F.2d 655, 662 (2d Cir.1993); *Al–Jundi v. Oswald,* No. 75–CV–0132E(M), 1997 WL 613232, at *4 (W.D.N.Y. Oct.2, 1997). Expert testimony is required only where damages or causation are outside the knowledge of the jury. *See, e.g., Miner,* 999 F.2d at 662–663 (finding testimony by plaintiff and his wife regarding his mental suffering sufficient to sustain and award for compensatory damages, where plaintiff had described "some objective correlation with events" that occurred as a result of the constitutional violation); *Al–Jundi,* 1997 WL 613232, at *3–4 (finding that plaintiffs' testimony as to occurrences and injuries sufficient to establish damages and proximate cause); *Duffen v. State,* 245 A.D.2d 653, 653–54, 665 N.Y.S.2d 978 (3d Dep't 1997)(finding expert testimony required to show that absence of medication caused dizziness and resulting fall); *Zegman v. New York,* 99 Misc.2d 473, 474, 416 N.Y.S.2d 505 (N.Y.Ct.Cl.1979)(finding testimony of plaintiff regarding her own con-

dition sufficient to sustain damage award for the injury, but insufficient to support a claim for permanency).

Based upon the facts alleged by plaintiffs, it is not clear whether expert testimony is required to establish plaintiffs' claimed injuries. Plaintiffs' subjective complaints relating to their injuries may be sufficiently corroborated by their medical records and doctors' bills to permit the jury to find that the injuries suffered were due to the rough treatment they received from defendants. Plaintiffs should be cautioned, however, that the law in the Second Circuit has not often upheld damage awards based on emotional distress or permanent injury without expert testimony. *See, e.g., Hansel*, 991 F.Supp. at 76 (granting summary judgment motion where plaintiffs failed to raise a factual issue as to whether injuries were sustained, or whether injuries were caused by defendants); *Capello v. Maresca* 921 F.Supp. 84, 85–86 (D.Conn.1995) (holding that in the absence of expert testimony, evidence insufficient to support seriousness, duration, or cause of non-obvious injuries therefore requiring remittitur); *Gootz v. Kelly*, 140 A.D.2d 874, 876, 528 N.Y.S.2d 446 (3d Dep't 1988) (holding that plaintiff's subjective complaints of pain, with no substantiating credible medical evidence, insufficient to establish a serious injury as required by New York's no fault law); *Costa v. Billingsley*, 127 A.D.2d 990, 991, 512 N.Y.S.2d 947 (4th Dep't 1987) (holding that subjective complaints without objective medical findings by plaintiff's treating physician insufficient to establish prima facie case of serious injury, in the face of defendant's expert testimony that plaintiff did not have serious injury).

Defendants' request for a dismissal of all claims for compensatory damages, and in the alternative, for an order precluding the plaintiffs from presenting any evidence regarding causation or permanency of their claimed injuries must be denied without prejudice to renew at the time of trial.[6]

### III. *CONCLUSION*

As a result of the above, defendants motion for summary judgment is granted as to plaintiffs' third and tenth causes of action. Defendants' motion for summary judgment for the second, sixth, seventh and ninth causes of action and compensatory damages is denied. All claims against the New York State Troopers, the Village Police Department, and for punitive damages against the Village of Deposit are dismissed. The remaining claims to be tried are plaintiffs' first, second, fourth, fifth, sixth, seventh, eighth and ninth causes of action. Therefore, it is

ORDERED that

1. Defendants' motion is GRANTED in part and DENIED in part;

2. Defendants' motion is GRANTED as follows:

a. The third and tenth causes of action are DISMISSED; and

b. All claims against the New York State Troopers, Thomas Kulirowski, and Jeff Kowalewski, are DISMISSED;

c. The claims against the Village of Deposit Police Department are DISMISSED;

d. The punitive damage claims against the Village of Deposit are DISMISSED;

3. Defendants' motion is DENIED with respect to:

a. The second, sixth, seventh, and ninth causes of action; and

b. Compensatory damages.

IT IS SO ORDERED.

---

**6.** A treating physician is not considered an expert witness. However, if he or she is expected to testify, they must be identified. Local Rule 26.3.