■ STEVEN MASKANTZ, Appellant, v MICHAEL HAYES, Respondent. [832 NYS2d 566]—

Order and judgment (one paper), Supreme Court, New York County (Marylin G. Diamond, J.), entered April 27, 2005, which, after a jury verdict in favor of defendant on his counterclaim for malicious prosecution, awarded compensatory damages of $10,000 and punitive damages of $100,000, and bringing up for review an order, same court and Justice, entered August 19, 2004, which granted plaintiff's motion to set aside the verdict or to reduce the award for punitive damages solely to the extent of setting aside the verdict on punitive damages and granting a new trial thereon, unless defendant stipulated to reduce such damages from $275,000 to $100,000, unanimously modified, on the facts, to the extent of remanding for a new trial on punitive damages only, and otherwise affirmed, without costs, unless defendant stipulates, within 20 days after service of a copy of this order with notice of entry, to accept punitive damages in the amount of $10,000, and to entry of an amended judgment in accordance therewith.

This action arose out of a physical altercation that occurred between plaintiff and defendant at a Greenwich Village restaurant named Boxers. The parties were co-owners of Boxers and two other restaurants in Manhattan, and had been engaged in a long-running dispute involving the management of the restaurants. Plaintiff alleges that he had not been physically present in any of the restaurants for several months because defendant had made threats against him.

With respect to the altercation, plaintiff alleges that on March 9, 2000, defendant, after being alerted to his presence in the restaurant, entered and committed an unprovoked assault upon him. Plaintiff claims that defendant "head-butted" him 15 to 20 times, punched him in the face and hit him with a bar stool. For his part, defendant alleges that plaintiff initiated the incident by hitting him in the head with a telephone and punching him, and that he responded by head-butting plaintiff twice

in self-defense. The only noncombatant eyewitness to testify at trial, the restaurant manager, stated that she heard defendant utter an expletive at plaintiff and then saw the parties "scuffling."

After the parties were separated, plaintiff called the police, who came to the restaurant and interviewed both combatants and the manager. After these interviews, the police arrested defendant for assault. Plaintiff, now accompanied by his lawyer, walked to the precinct, allegedly at the request of the police. Ultimately, defendant was criminally charged with assault and harassment, but was acquitted after a bench trial in Criminal Court.

Plaintiff then commenced the instant civil action against defendant for assault and battery. Defendant counterclaimed for assault, battery and malicious prosecution. A trial was held and the jury found neither party liable for assault or battery, but found plaintiff liable on the malicious prosecution counterclaim. The jury awarded defendant $10,000 in compensatory damages and $275,000 in punitive damages.

Plaintiff moved to set aside the verdict on the malicious prosecution claim as against the weight of the evidence, and to set aside or reduce the jury's punitive damages award. He argued that the trial evidence did not support the jury's findings that he initiated a criminal prosecution with malicious intent and lacked probable cause to believe he was the victim of a criminal assault. The trial court denied plaintiff's motion to set aside the liability verdict, but granted a new trial on punitive damages unless defendant stipulated to a reduced award of $100,000. On October 4, 2004, defendant so stipulated and judgment was subsequently entered.

On appeal, plaintiff argues that the jury's verdict on the malicious prosecution claim was against the weight of the evidence and should have been set aside. We disagree. "A jury verdict should not be set aside as contrary to the weight of the evidence unless the jury could not have reached the verdict by any fair interpretation of the evidence. The determination of the jury which observed the witnesses and the evidence is entitled to great deference" (*Mesiti v Wegman*, 307 AD2d 339, 340 [2003] [internal quotation marks and citations omitted]). Thus, the power to set aside a jury verdict should be exercised sparingly, "for in the absence of indications that substantial justice has not been done, a successful litigant is entitled to the benefits of a favorable jury verdict" (*Nicastro v Park*, 113 AD2d 129, 133 [1985]).

To prevail on his counterclaim for malicious prosecution, de-

fendant was required to prove four elements: (1) plaintiff's initiation of a criminal proceeding against him, (2) termination of the proceeding in his favor, (3) lack of probable cause, and (4) malice (*Brown v Sears Roebuck & Co.*, 297 AD2d 205, 208 [2002], citing, inter alia, *Smith-Hunter v Harvey*, 95 NY2d 191, 195 [2000]). "Failure to establish any one of these elements defeats the entire claim" (*Brown* at 208).

The jury's finding that defendant proved all four elements of his malicious prosecution counterclaim is supported by a fair interpretation of the trial evidence. First, with respect to the initiation of a criminal proceeding, plaintiff is precluded from challenging the jury's implicit finding of this element. In fact, a review of the court's instructions to the jury demonstrates that the question of initiation was never given to the jury to decide. Instead, the court's charge assumed that plaintiff initiated a criminal proceeding and merely asked the jury to decide the questions of probable cause and malice.* Since the record indicates that plaintiff's counsel neither objected to the court's charge nor requested any specific instruction on the element of initiation, plaintiff has waived any right to challenge this finding on appeal (CPLR 4110-b).

Even if plaintiff had not waived this issue, his argument would fail on the merits. A malicious prosecution defendant must do more than merely report a crime to the police and cooperate in its prosecution; rather, he or she must play an active role in the prosecution, such as by encouraging or importuning the authorities to act (*Brown* at 209). "[A] defendant may be said to have initiated a criminal proceeding by providing false evidence to the police or withholding evidence that might affect the determination by the police to make an arrest" (*id.* at 210). Here, it is undisputed that plaintiff summoned the police to the restaurant and accused defendant of initiating the altercation by head-butting him 20 times without provocation. However, the jury's verdict, which included specific findings that plaintiff maliciously initiated a criminal proceeding, and did so without probable cause, strongly indicates that the jury did not believe plaintiff's testimony about an unprovoked attack by defendant. Ample evidence fairly supports a finding that plaintiff initiated a criminal proceeding by making a false accusation to the police namely, defendant's testimony about how he was attacked by plaintiff.

Other factors support the jury's conclusion that plaintiff

---

* At one point during the charge, the court instructed: "Mr. Maskantz doesn't deny that he was responsible for the prosecution, but contends that he acted in good faith and on reasonable grounds."

played an active role in securing the arrest and prosecution of defendant. After calling the police to the restaurant, plaintiff also called his personal attorney, who arrived shortly thereafter and accompanied plaintiff to the police precinct. Although the record is unclear whether defendant was arrested at the restaurant or later at the precinct, it is clear that, at a minimum, both plaintiff and his attorney were in favor of the determination to arrest defendant.

This conclusion is buttressed by evidence of two additional events that occurred before and after the March 9, 2000 altercation, both relevant to plaintiff's state of mind on that date. First, six months before the incident in Boxers, plaintiff admits that he left a message on defendant's telephone answering machine threatening to have defendant put in jail, where he would be sodomized. Plaintiff claims that he left this message because defendant had been making death threats against him. Second, a week after the Boxers incident, plaintiff called the police from his hospital bed to request that the police arrest defendant for violating an order of protection that prohibited defendant from entering the three restaurants the parties co-owned. Whatever the propriety of defendant's actions in each of these incidents, at a minimum they give rise to a strong inference that plaintiff, contrary to his testimony, was vigorously seeking defendant's arrest and incarceration.

Regarding the second element of malicious prosecution, defendant's acquittal of the criminal charges against him definitively establishes that such charges were terminated in his favor (*Chmielewski v Smith*, 73 AD2d 1053 [1980]; *see generally Smith-Hunter*, 95 NY2d at 195-196).

Nor was the jury's finding on the third element—that plaintiff had no probable cause to accuse defendant of a crime—against the weight of the evidence. Probable cause requires a showing of "such grounds as would induce an ordinarily prudent and cautious person, under the circumstances, to believe that [defendant] had committed the [crime]" (*Smith v County of Nassau*, 34 NY2d 18, 25 [1974]). When the defense of probable cause is based on conflicting evidence, from which reasonable persons might draw different inferences, the question is one for the jury, not the court (*Kramer v City of New York*, 173 AD2d 155, 156 [1991], *lv denied* 78 NY2d 857 [1991]). Here, the jury was properly given the issue of probable cause since its existence depended almost entirely on which of the two conflicting versions of how the fight began should be credited.

In our view, no basis exists to disturb the jury's findings of credibility in favor of defendant. Even though defendant was a

larger man than plaintiff and the manager's testimony indicated that defendant returned to the restaurant to confront plaintiff, there still is no direct evidence from a noninterested witness as to who started the *physical* altercation. Moreover, there was ample basis in the trial record for the jurors to conclude that plaintiff was prone to making false or exaggerated accusations against defendant for the purpose of having him arrested.

Finally, a fair interpretation of the evidence supports the jury's finding of malice. Malice, in the malicious prosecution context, exists where the malicious prosecution defendant commences a criminal proceeding "due to a wrong or improper motive, something other than a desire to see the ends of justice served" (*Nardelli v Stamberg*, 44 NY2d 500, 502-503 [1978]). Further, in an appropriate case, "a jury may, but is not required to, infer the existence of actual malice from the fact that there was no probable cause to initiate the proceeding" (*Martin v City of Albany*, 42 NY2d 13, 17 [1977]). Here, as indicated, the jury expressly found no probable cause, and also heard additional evidence of plaintiff's threats and attempts to have defendant arrested. Such evidence amply justifies the jury's finding of actual malice.

The only remaining issue involves the jury's punitive damages award, which was reduced by stipulation to $100,000. Punitive damages may be awarded in an action for malicious prosecution if the party so charged was motivated by actual malice (*Nardelli*, 44 NY2d at 503 ["a finding of liability for malicious prosecution precludes a determination as a matter of law that punitive damages are improper, for the actual malice necessary to support an action for malicious prosecution also serves to justify an award of exemplary damages"]). Whether to award punitive damages in a particular case and the amount of such damages are questions for the trier of fact, and such an award, if any, should not be lightly disturbed (*id.*).

Under the test set forth in the United States Supreme Court decision in *BMW of North America, Inc. v Gore* (517 US 559, 568 [1996]), we find that under the particular circumstances in this case, which involved an altercation between business associates, the award of punitive damages, as reduced by the trial court, to be excessive to the extent indicated. Concur—Friedman, J.P., Marlow, Sullivan, Nardelli and Gonzalez, JJ.