*3 OPINION OF THE COURT
Richter, J.
On November 7, 2009, plaintiff Matthew Moorhouse, an Australian citizen, was arrested for the attempted rape of defendant G.E The charged incident occurred while Moorhouse was a guest at The Standard Hotel located in the Meatpacking District in Manhattan. G.E, a Chinese immigrant who was working at the hotel as a housekeeper, alleged that while she was cleaning Moorhouse’s room, he pushed her onto the bed, sexually abused her, and attempted to rape her. G.E fled from the room and immediately reported the incident to her supervisors, hotel security and the police.
Moorhouse was subsequently indicted by a grand jury, went to trial, and was found not guilty. After the acquittal, he commenced this action against G.E, her purported employers, defendants The Standard, New York, and André Balazs Froperties (the hotel defendants), and defendant Kimberly Russell, a housekeeping supervisor at the hotel. In the complaint, Moor-house asserts causes of action for malicious prosecution, false imprisonment, defamation, intentional infliction of emotional distress, conversion and respondeat superior.
In the fall of 2009, Moorhouse traveled to the United States to attend an educational seminar and conduct a series of business meetings.[1] After first visiting Miami and Boston, he arrived in New York on Friday, November 6, and checked into room 924 at The Standard Hotel. Moorhouse had a business meeting on Monday and planned on spending the weekend in the city. On the night he arrived, he went to a Broadway show, took a walk around the hotel neighborhood and went to bed. The next day, Saturday, November 7, he woke up early, went for a walk and returned to the hotel where he spent the day in his room sleeping and sending emails.
That afternoon, Russell noticed that Moorhouse’s room had not yet been cleaned. According to Russell, she knocked on his door and Moorhouse told her that he wanted the room to be serviced. Russell then instructed G.E and another housekeeper, Cai Qing Chen, to clean Moorhouse’s room. G.E and Chen went to Moorhouse’s room and knocked on the door, and Moorhouse let them in. After G.E and Chen picked up trash and towels, they left the room to get fresh linens. Chen went to clean an *4 other room and G.E returned to Moorhouse’s room alone to change the bedsheets.
G.E testified that while she was making the bed, Moorhouse, who was sitting on a nearby sofa, started to engage her in conversation. He asked if she had a boyfriend, if she thought he was handsome, and if she wanted to visit him that night. When G.E answered, “No,” Moorhouse, who stands 5 feet 10 inches tall and weighs 175 pounds, got up off the sofa, walked behind her and told her that she was sexy. Upon hearing that, G.E, who is only 5 feet 2 inches and weighs 105 pounds, started to run. Moorhouse grabbed her, put both of his hands on her shoulders and forcefully shoved her onto the bed. As G.E lay on her back with her feet dangling off the side of the bed, Moorhouse laid on top of her pressing his body against hers. He continued to ask, “Don’t you think I am handsome?” and G.E responded, “No, no, no.”
G.E testified that Moorhouse started to kiss her on her neck and face. She tried to push him away, but the force he was using was so great she could not even move. Moorhouse continued to kiss G.E, and touched her left breast with his right hand. He tried to squeeze her breast, but G.E pushed his hand away. Moorhouse then moved his hand down and pressed it in between G.E’s legs. He inserted his finger into her vagina through her undergarments and pushed very hard, causing G.E tremendous pain. At the same time, Moorhouse started to pull G.E’s underwear off. She tried again to push him away, to no avail.
According to G.E, Moorhouse then stood up, placed his legs against the outside of her legs and pulled his pants down, exposing himself. G.E tried again to resist the attack, but Moor-house threw her down. He tried to push her hand into his penis saying, “Touch me,” and G.E responded, “No, no.” G.E then heard a knock on the door and Moorhouse began to put his pants back on. G.E ran to the door, opened it, and fled into the hallway past the room service employee who had just knocked. G.E ran out so fast, she left her cleaning supplies in the room. She noticed that the room next door was being cleaned so she fled inside for safety. G.E found Russell in that room, and immediately told her about Moorhouse’s assault.
Russell testified that while checking rooms on the floor, she heard G.E screaming, “No!” or “Stop!” from inside Moorhouse’s room. Russell decided to go into the room next door to see if she could hear another scream through the walls. As she entered, she noticed a room service employee in the hallway. Seconds *5 later, G.E ran into Russell’s room with her hand on her chest, loudly exclaiming, “Oh my God, oh my God, this man i[s] crazy!” According to Russell, G.E was “hysterical” and “in shock” and her hands were shaking. Russell asked G.E to explain what happened. G.E told Russell that Moorhouse threw her on the bed and touched her. Russell told G.E not to say another word, and then called hotel security to report the incident. Russell testified that as she waited in the hallway for security to arrive, Moorhouse walked by with a smirk on his face.
G.E promptly went to the office of Faolo Moratin, the hotel’s housekeeping director, and told him about Moorhouse’s assault. Moratin described G.E as being in shock and not her normal self; her eyes were red, her body was shaking, and she appeared embarrassed and uncomfortable talking about the incident. She told Moratin that Moorhouse was “crazy” and had pushed her onto the bed and kissed her on the neck. At the moment G.E told Moratin that Moorhouse had touched her, Moratin instructed her to stop talking and called hotel security. Moratin testified that although G.E appeared to have more to say about the incident, he wanted to follow hotel protocol by having security personnel present.
Hotel security officers arrived, and after questioning G.E, they called 911. Folice officers Frank Bellotti and Michael Schilling responded to the hotel and interviewed G.E, who provided further details about Moorhouse’s assault. G.E told the officers that Moorhouse kissed her neck, threw her onto the bed, held her down, tried to remove her clothing, and put his finger in her vagina. Bellotti described G.E as having puffy eyes and being nervous and shy. He also explained that G.E had trouble expressing herself, could not bring herself to say the word “vagina,” and instead resorted to hand gestures to describe how Moorhouse had sexually abused her. After speaking to G.E, the police went to Moorhouse’s room and arrested him.
Some time later, G.E went to the hotel locker room to change her clothes and saw Chen. Chen testified that G.E came into the locker room crying, her eyes red, and her body shaking. G.E told Chen that Moorhouse tried to rape her, and described how he pushed her onto the bed, started kissing her on the neck, touched her breast and vagina, tried to tear off her undergarments, and pulled down his pants. Chen testified that G.E told her that she was so scared and shocked, she could not cry out for help, but just said, “No, no, no.”
At the criminal trial, Moorhouse testified that on the afternoon of the incident, after placing a room service order, he *6 let G.E and another housekeeper into his room to clean. They took the towels and bed sheets out of the room and G.E returned alone to make the bed. As he was sitting on a couch watching television, Moorhouse noticed that there was no activity around the bed, so he got up to see where G.E was. He claimed that he saw her squatting down near the entrance to the room with her hand in his Erada bag. He asked G.E what she was doing and she said she was moving bags. He told her she was not moving bags and that he would have to talk to her boss about her behavior.[2] Moorhouse told G.E to “finish the bed and get the fuck out.” G.E complied with his demand and continued to make the bed. There was a knock on the door and a room service employee came in, put the food on the table and left. According to Moorhouse, G.E left a few minutes later.
Moorhouse conceded that he did not report G.E.’s alleged misconduct to hotel personnel or the arresting officers that day. Instead of calling the front desk, Moorhouse left the room and went outside to purchase some beverages. He saw Russell in the hallway, recognized her as a hotel employee and waved to her, but did not tell her about G.E’s alleged actions. As he entered the elevator, Moorhouse saw a hotel staff member getting off another elevator, but Moorhouse did not say anything to that employee about the alleged theft attempt. Nor did he report it to the front desk or hotel security when he left the hotel. Shortly after he returned to his room, two police officers arrived and arrested him. Even then, Moorhouse did not tell the police that G.E had attempted to steal from him. Moorhouse denied touching or sexually assaulting G.E and claimed she made up the story to cover up her attempted theft.
After Moorhouse brought this action, G.E and the hotel defendants each moved for summary judgment dismissing the complaint. Moorhouse moved for leave to amend the complaint to add Hotels AB Gansevoort Employees, LLC as a defendant. In a decision and order entered January 25, 2013, the motion court granted the motions of G.E and the hotel defendants, and denied Moorhouse’s motion as moot. Moorhouse appeals from the motion court’s dismissal of the malicious prosecution, defa *7 mation and respondeat superior causes of action, and the denial of his motion to amend.[3] We now affirm.
In the malicious prosecution cause of action, Moorhouse contends that G.E initiated the criminal proceeding against him without probable cause and with malice.[4] The Court of Appeals has imposed “stringent requirements” for bringing malicious prosecution claims (Curiano v Suozzi, 63 NY2d 113, 119 [1984]). The Court explained that this is necessary “to effectuate the strong public policy of open access to the courts for all parties without fear of reprisal in the form of a retaliatory lawsuit” (id.). To prevail on such a claim, a plaintiff has a “heavy burden” (Smith-Hunter v Harvey, 95 NY2d 191, 195 [2000]), and must establish the following four elements: “(1) the initiation of a criminal proceeding by the defendant against the plaintiff, (2) termination of the proceeding in favor of the accused, (3) lack of probable cause, and (4) malice” (Brown v Sears Roebuck & Co., 297 AD2d 205, 208 [1st Dept 2002]). A plaintiffs failure to prove any one of these elements will defeat the entire claim (id.).
A civilian who simply provides information to law enforcement authorities, who are then free to exercise their own independent judgment as to whether an arrest should be made and criminal charges filed, will generally not be held liable for malicious prosecution (see Du Chateau v Metro-North Commuter R.R. Co., 253 AD2d 128, 131 [1st Dept 1999]). To establish the element of initiation of a criminal proceeding, it typically must be shown that the defendant did something “more than merely report a crime to the police and cooperate in its prosecution” (Maskantz v Hayes, 39 AD3d 211, 213 [1st Dept 2007]; see Present v Avon Prods., 253 AD2d 183, 189 [1st Dept 1999] [one who merely discloses to a prosecutor all material information within her knowledge is not deemed to have initiated the proceeding], lv dismissed 93 NY2d 1032 [1999]). Instead “[t]he defendant must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal, to the point where the officer is not acting of his own volition” (Mesiti *8 v Wegman, 307 AD2d 339, 340 [2d Dept 2003] [internal quotation marks omitted]; see Viza v Town of Greece, 94 AD2d 965, 966 [4th Dept 1983], appeal dismissed 64 NY2d 776 [1985]).
Applying these principles, we conclude that the motion court properly dismissed the cause of action for malicious prosecution. The evidence in the record shows that G.E did not play an active role in Moorhouse’s arrest and prosecution, but merely reported a crime to the police and prosecutors. She did not contact, encourage, or direct the police or prosecutors to arrest and prosecute plaintiff. Hotel security personnel, not G.E, called the police, and G.E testified that she did not ask them to do so. She further testified that she never insisted that the police arrest Moorhouse. This testimony was corroborated by Officer Bellotti, who submitted an affidavit stating that G.E did not direct or demand Moorhouse’s arrest. Instead, Bellotti explained that he and Officer Schilling alone made the decision to arrest Moorhouse after speaking with G.E and observing her demeanor. Based on this unrefuted evidence, it cannot be said that G.E initiated the criminal proceeding (see Narvaez v City of New York, 83 AD3d 516, 516 [1st Dept 2011] [malicious prosecution claim dismissed where the defendants did not participate in the arrest or prosecution of the plaintiff except as witnesses]).
A person can also be said to have initiated a criminal proceeding by knowingly providing false evidence to law enforcement authorities or withholding critical evidence that might affect law enforcement’s determination to make an arrest (see Maskantz, 39 AD3d at 213; Brown, 297 AD2d at 210). Here, however, there is no credible evidence in the record that the information G.E gave to the police or prosecutors was false. G.E testified, in graphic detail, about the prolonged sexual assault committed by Moorhouse in his hotel room. She described how Moorhouse threw her onto the bed, pressed against her, kissed her face and neck, touched her breast, tried to remove her undergarments, inserted his finger in her vagina, pulled his pants down and straddled her on the bed. Through this testimony, G.E met her prima facie burden of establishing that the information she provided to law enforcement was true.
The record contains compelling evidence corroborating G.E’s testimony that Moorhouse sexually assaulted her. Russell, who was in the hallway at the time, testified that she heard G.E’s *9 screams coming from inside Moorhouse’s room.[5] Russell described how, seconds later, G.E came running to her “hysterical” and “in shock” exclaiming, “Oh my God, oh my God, this man i[s] crazy!” G.E told Russell that Moorhouse threw her on the bed and touched her. Russell immediately sent G.E to Moratin’s office, where she repeated what had happened. Moratin testified that G.E’s eyes were red and her body was shaking as she described how Moorhouse assaulted her. G.E’s prompt outcries to Russell and Moratin further corroborate her testimony that an assault had taken place (see People v Rosario, 17 NY3d 501, 511 [2011] [evidence that sexual assault victim promptly complained about the incident was admissible to corroborate allegation that an assault occurred]).[6]
In opposition to G.E’s prima facie showing, Moorhouse points to no credible evidence that G.E’s representations to law enforcement were false. Moorhouse relies solely on his own testimony, uncorroborated by any other witnesses or evidence, denying that any sexual assault had taken place. In evaluating testimony, courts “should not discard common sense and common knowledge” (Loughlin v City of New York, 186 AD2d 176, 177 [2d Dept 1992] [internal quotation marks omitted], lv denied 81 NY2d 704 [1993]). “While generally credibility determinations are left to the trier of the facts, where testimony is physically impossible [or] contrary to experience, it has no evidentiary value” (Espinal v Trezechahn 1065 Ave. of the Ams., LLC, 94 AD3d 611, 613 [1st Dept 2012] [internal quotation marks omitted]).
Moorhouse’s entire case hinges upon his claim that G.E immediately fabricated an allegation of sexual assault to conceal her attempted theft of his personal belongings and then faked *10 hysteria when she ran into the next room to report it to her supervisor. It strains credulity that G.E would, within a matter of seconds, spin such an elaborate tale simply as a preemptive strike against the possibility that Moorhouse might subsequently decide to report her. We also see no reason why she would repeat these claims to the police and the prosecutor when the record fails to show that either agency was pursuing criminal charges against her for the alleged attempted theft.
Furthermore, Moorhouse’s uncorroborated allegation that G.E tried to steal something from his bag while cleaning the room is fatally undermined by the fact that he never reported the supposed theft attempt that day despite having had numerous opportunities to have done so. When he allegedly saw G.E brazenly reach inside his bag, he did not call the front desk or hotel security, or even ask G.E to leave the room. Instead, inexplicably, he claims to have instructed her to continue cleaning the room. Moorhouse did not report the alleged incident to the room service employee who entered his room shortly after. Nor did he tell Russell when he passed her in the hallway, despite recognizing her as a member of the hotel staff and even waving hello to her. Likewise, he said nothing to the hotel employee he encountered upon entering the elevator. And when Moorhouse exited the hotel, he passed by the front desk without saying a word.[7]
Most glaringly, Moorhouse did not tell the officers who arrested him that G.E had tried to take his belongings. Moor-house fails to convincingly explain, even in this civil action, why he did not tell the police, who were arresting him for a serious sexual assault, that the person who made the allegation had herself just tried to steal from him. Moorhouse’s repeated failure to tell anyone about G.E’s alleged misconduct constitutes behavior so contrary to common experience as to render his testimony about the alleged theft attempt without evidentiary value (see Espinal, 94 AD3d at 613; Loughlin, 186 AD2d at 177).
Moorhouse’s credibility is further undermined by the contradictory reasons he gave for not reporting G.E At one point, he explained that he was skeptical that the hotel would do anything *11 about it. At another point, he said that he was no longer concerned about the incident and was more interested in going out to get a soda. He also testified that he did not report the alleged incident because he did not get a chance to. When reminded of the various hotel personnel he walked past, Moor-house changed his story again, saying that he was undecided about whether he should make a report.
Moorhouse makes a number of unpersuasive attacks on G.E’s credibility. First, he alleges that G.E is unworthy of belief because she did not include all of the details of the attack when she initially reported it to her fellow employees and the police. This, however, is behavior typical of sexual assault victims. In any event, there are sound reasons why G.E did not initially provide a detailed recounting of the incident. When speaking to Russell and Moratin, G.E began to explain how Moorhouse had pushed her on the bed and touched her. Upon learning that a hotel guest had engaged in inappropriate conduct, both Russell and Moratin instructed G.E to stop talking. G.E also explained that she was embarrassed talking about such a personal matter. G.E’s account of the incident is not undermined by the absence of physical or forensic evidence of a sexual assault because it is undisputed that the police and prosecutors did not collect any evidence or conduct any forensic analysis.
In sum, G.E has made a prima facie showing that she did not initiate Moorhouse’s criminal prosecution, one of the requisite elements of a malicious prosecution claim. She has submitted evidence establishing that she did not play an active role in Moorhouse’s arrest and prosecution, and that she did not provide false information to law enforcement authorities. In response, Moorhouse points to no credible evidence raising a triable issue of fact. Moorhouse’s acquittal in the criminal case does not satisfy his burden to raise an issue of fact, because this appeal involves civil causes of action having a different burden of proof. The criminal acquittal was not a finding that Moor-house was innocent, but only reflected that the prosecution had not satisfied its burden of proving guilt beyond a reasonable doubt (see Reed v State of New York, 78 NY2d 1, 7-8 [1991]). Accordingly, under the specific facts presented here, the malicious prosecution cause of action against G.E was properly dismissed.
For similar reasons, Moorhouse’s defamation claim against G.E also fails. In that cause of action, Moorhouse contends that G.E falsely told other hotel employees and the police that he *12 had sexually assaulted her.[8] To prove a claim for defamation, a plaintiff must show, inter alia, that the complained-about statements are false (see Dillon v City of New York, 261 AD2d 34, 38 [1st Dept 1999]). “Because the falsity of the statement is an element of the defamation claim, the statement’s truth or substantial truth is an absolute defense” (Stepanov v Dow Jones & Co., Inc., 120 AD3d 28, 34 [1st Dept 2014]). Since no triable issue of fact exists as to the falsity of G.E’s statements, the defamation cause of action against G.E was correctly dismissed.
Moorhouse cannot prevail against the hotel defendants under the doctrine of respondeat superior because the underlying torts against G.E have been dismissed (see Pistilli Constr. & Dev. Corp. v Epstein, Rayhill & Frankini, 84 AD3d 913, 914 [2d Dept 2011] [“claim of vicarious liability cannot stand when there is no primary liability upon which such a claim of vicarious liability might rest” (internal quotation marks omitted)]).
In light of our disposition, Moorhouse’s appeal from the denial of his motion to amend the complaint is moot.
We have considered Moorhouse’s remaining contentions and find them unavailing.
Accordingly, the order of the Supreme Court, New York County (Joan M. Kenney, J), entered January 25, 2013, which, to the extent appealed from as limited by the briefs, granted defendants-respondents’ motions for summary judgment dismissing the causes of action for defamation, malicious prosecution and respondeat superior, and denied as moot plaintiffs motion to amend the complaint, should be affirmed, without costs.
Renwxck, J.F., Manzanet-Daniels, Feinman and Gische, JJ., concur.
Order Supreme Court, New York County, entered January 25, 2013, affirmed.

. The facts are taken from testimony at both the criminal trial and civil depositions.

. G.E testified that she had never before been accused of theft, dishonesty, or any other misconduct at the hotel. Both Russell and Moratin testified that G.E is a good employee, and confirmed that she had no disciplinary or other problems.

. Moorhouse abandoned his appeal from the dismissal of the remainder of the causes of action and the dismissal of the complaint as against Russell.

. At oral argument, Moorhouse’s counsel conceded that there was no viable direct claim against the hotel defendants for malicious prosecution. Instead, Moorhouse only seeks to hold the hotel defendants vicariously liable under respondeat superior.

. Moorhouse contends that Russell lied in her testimony at the criminal trial, but provides no motive for her to have done so. Notably, at the time of the criminal trial, Moorhouse had not yet filed his complaint. Thus, it cannot be argued that Russell’s status as a defendant in this action gave her reason to testify untruthfully.

. Other evidence in the record provides additional corroboration of G.E’s account of the incident. Chen corroborated G.E’s testimony that Russell had instructed her and G.E to clean Moorhouse’s room, that they started to clean the room together, and that she left G.E alone to complete the job. Russell testified that when she heard G.E’s screams, she observed a room service employee in the hallway, which corroborates G.E’s testimony that a hotel employee knocked on the door to Moorhouse’s room. Russell also testified that after the incident, she retrieved G.E’s cleaning supplies from Moorhouse’s room, thus corroborating G.E’s testimony that she left them there when she made her escape.

. Moorhouse also testified that when he went outside to get a drink, he left his computer in the room. If he had really just seen G.E trying to steal his property, it would make no sense for him to leave the room with his computer inside and not report the incident, especially in light of the fact that G.E had a key to the room.

. On appeal, Moorhouse does not contend that the hotel defendants participated in making any of these statements. Thus, he has abandoned any direct defamation claim against the hotel defendants, leaving only the claim that they are vicariously liable for G.E’s statements.